IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FRITZ NEMSKY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 3:17-cv-781 |
| ) | |
| MADISON COUNTY ILLINOIS, AN ) | **PLAINTFF REQUESTS** |
| ILLINOIS MUNICIPALITY and ) | **TRIAL BY JURY** |
| RALPH BURNETT, INDIVIDUALLY ) | |
| AND IN HIS OFFICIAL CAPACITY AS ) | |
| MADISON COUNTY ) | |
| SUPERINTENDENT OF THE SPECIAL ) | |
| SERVICES DEPARTMENT, AREA #1, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW Plaintiff, Fritz Nemsky, by and through his undersigned attorneys, and for his Complaint against Defendants MADISON COUNTY, ILLINOIS, an Illinois Municipality and RALPH BURNETT, individually and in his capacity as Madison County Superintendent of the Special Services Department, Area #1, states:

## JURISDICTION AND VENUE

1. This action is brought pursuant to the Americans with Disabilities Act of 1990 ("ADA") and the Family Medical Leave Act of 1993 ("FMLA").

2. Plaintiff is a citizen of the United States and resides in the County of Madison, State of Illinois, which is in this judicial district.

3. Defendant Madison County, Illinois is an Illinois municipality located in this judicial district. Ralph Burnett, at all relevant times, was Madison County's Superintendent of the Special Services Department, Area #1.

4. Jurisdiction and venue are proper in this Court pursuant to this Court's Federal Question Jurisdiction, 28 USC § 1331, as this matter is brought pursuant to the federal laws known as the ADA and the FMLA. Furthermore, all acts alleged herein occurred within this judicial district.

5. Specifically, with regard to Plaintiff's claims of discrimination brought under the ADA, Plaintiff states as follows:

    a. Plaintiff file a timely charge of disability discrimination and retaliation with the EEOC on or about October 29, 2016 – EEOC charge number 560-2017-0025.

    b. Plaintiff received a Notice of Right to Sue on or about April 27, 2017 from the U.S. Department of Justice, Civil Rights Division; Plaintiff files suit within the 90-day window provided by law for bringing suit in federal court.

    c. The unlawful employment practices and illegal discrimination and retaliation alleged herein occurred in Madison County, Illinois, which is an Illinois county in the judicial circuit which comprises the Southern District of Illinois.

## **FACTS**

6. Plaintiff became employed by the Madison County Special Services Department, Area #1, on or about September 5, 1989.

7. On or about November 1, 2000, Plaintiff was promoted to the position of Maintenance Supervisor of the Special Services Department, Area #1.

8. At all relevant times, from the date of Plaintiff's hire to the date Defendants effectively fired Plaintiff, Plaintiff successfully performed the essential functions of his job and met and exceeded Defendants' reasonable job expectations.

9. In November of 2015, Plaintiff suffered from heart failure in the form of cardiomyopathy and was hospitalized.

10. Plaintiff notified Defendants of his hospitalization and lawfully elected to take FMLA leave.

11. As a result of his illness, Plaintiff underwent open heart surgery to implant a left ventricle assistance device otherwise known as an LVAD.

12. After Plaintiff's hospitalization, he experienced substantial limitations with major life activities.

13. Plaintiff is an individual with a disability within in the meaning of the ADA. 42 U.S.C. § 12102(2).

14. Prior to the expiration of Plaintiff's FMLA leave, he received a physical examination from his personal physician which stated that he could return to work with the reasonable accommodation of a 10-pound weight restriction due to his disability.

15. Plaintiff informed the Defendants that he was prepared and capable to return to work as Maintenance Supervisor of the Special Services Department, Area #1 and provided Defendants with a copy of his work release.

16. On April 20, 2016, Plaintiff received a letter from Ralph Burnett, the Superintendent of the Madison County Special Services Department, Area #1, stating that Plaintiff would need to obtain a second physical examination from Midwest Occupational Medicine on April 25, 2016.

17. Upon information and belief, prior to Plaintiff's physical examination at Midwest Occupation Medicine, Ralph Burnett contacted the examining physician, Dr. George Dirkers, and provided him with a list of job functions that he claimed were required of Plaintiff before he returned to work.

18. After Plaintiff's examination on April 25, 2016, Dr. Dirkers determined he could perform the majority of job functions listed for the position of Maintenance Supervisor without much difficulty.

19. Dr. Dirkers stated that Plaintiff could perform sedentary job functions such as computer work, ordering inventory, schedules, workloads, performance reviews, compliance work, etc. Dr. Dirkers also stated that he was willing to discuss any specific job task individually with Defendants.

20. Dr. Dirkers stated he had some concerns with a small number of the job functions which he was provided from Mr. Burnett. These included:

    a. Operating heavy equipment such as a jet truck, vac truck or TV truck;

    b. Driving a DOT certified vehicle;

    c. Performing electrical repairs; and

    d. Entrance and exits into wells and walking extended ranges.

21. None of the activities outlined in Paragraph 20 were essential functions of Plaintiff's job.

22. From November 1, 2000 until the date of Plaintiff's illness, he never operated a jet truck, vac truck or TV truck in his position as Maintenance Supervisor of the Special Services Department, Area #1.

23. From November 1, 2000 until the date of Plaintiff's illness, he never drove a DOT certified vehicle in his position as Maintenance Supervisor of the Special Services Department, Area #1.

24. From November 1, 2000 until the date of his illness, Plaintiff was never required to manually perform electrical repairs in his position as Maintenance Supervisor of the Special Services Department, Area #1.

25. From November 1, 2000 until the date of Plaintiff's illness, he never entered or exited a well in his position as Maintenance Supervisor of the Special Services Department, Area #1.

26. From November 1, 2000 until the date of Plaintiff's illness, he was never required to walk extended ranges in my position as Maintenance Supervisor of the Special Services Department, Area #1.

27. Plaintiff received another letter from Ralph Burnett on April 27, 2016, which stated that Plaintiff would not be able to return to work because he could not perform the "essential functions" of his job as Maintenance Supervisor.

28. Plaintiff's work as Maintenance Supervisor did not require him to engage in manual labor.  In fact, Plaintiff's essential job functions were almost completely sedentary in nature.  Plaintiff's disability had no effect on his ability to perform the essential functions of his job as Maintenance Supervisor.

29. On April 28, 2016, Plaintiff's FMLA leave expired.

30. Defendants failed to restore Plaintiff to his previous position as Maintenance Supervisor upon expiration of his FMLA leave, as required by law.

31. On April 29, 2016, Plaintiff was notified by Madison County that his health benefits had been terminated.

32. On May 19, 2016, Plaintiff received another letter from Ralph Burnett suggesting that Plaintiff voluntarily retired even though Plaintiff had never expressed an intention or desire

to retire. In fact, Plaintiff had only expressed his desire to return to his previous position as Maintenance Supervisor.

33. On May 19, 2016, a "Personnel Action Request" was filed by Ralph Burnett with Madison County Payroll Services which stated that the effective date of Plaintiff's termination was April 28, 2016. The reason for the termination was listed as "retirement."

34. Defendants' claim that Plaintiff could not perform the essential functions of his job was disingenuous and done merely to provide cover for his termination.

35. Plaintiff's disability would have had no effect on the performance of his actual duties as Maintenance Supervisor if granted the reasonable accommodation of a 10-pound work restriction. The 10-pound weight restriction would not have interfered with Plaintiff's essential job duties, would not have interfered with the smooth running of the office, and is a reasonable accommodation which defendants were required, consistent with the ADA, to permit Plaintiff to receive.

36. Defendants did not initiate or participate in any discussions as to how they, consistent with the requirements of the ADA, might reasonably accommodate Plaintiff's disability/impairment.

37. Defendants discriminated against Plaintiff on account of his disability, perceived disability, history of impairment, and terminated Plaintiff in violation of the ADA.

38. Defendant, Madison County, Illinois, has an established history of disability discrimination in the workplace. It is currently subject to an injunction, ordered by this Court, enjoining it from taking any further actions that would violate the ADA.

39. Plaintiff has suffered loss of income and benefits, including but not limited to loss of increased IMRF pension benefits he would have received had he retired at a later date, and has

experienced emotional distress and humiliation caused by Defendants' discrimination, retaliation, and termination of his employment.

## COUNT- I
## VIOLATIONS OF THE AMERICAN WITH DISABILITIES ACT

40. Plaintiff incorporates and restates each of the above paragraphs as is fully set forth herein.

41. Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2).

42. Defendants are employers as that term is used in the ADA and Defendants are required by the ADA to comply with the statutory requirements of the ADA.

43. In violation of the ADA, Defendants never initiated or participated in any give and discussion as to how Defendants might reasonably accommodate Plaintiff's disability/impairments.

44. If Defendants had any concern regarding Plaintiff's ability to perform his job, Defendants were required by the ADA to engage in an interactive, give and take process of finding reasonable accommodations; Defendants never made any such efforts.

45. Defendants discriminated against Plaintiff on account of his disability, perceived disability, history of impairment, and Defendant's employment in violation of the ADA.

46. Defendants stated reasons for preventing Plaintiff to return to his previous position as Maintenance Supervisor were pretextual and merely served as cover for their discriminatory intent.

47. As a direct and proximate cause of Defendants' violations of the ADA, Plaintiff has incurred damages in the form of loss of income and benefits, emotional distress, attorney's

fees, costs, and expenses in bringing this claim, and Plaintiff is entitled to recover his attorney's fees, costs and expenses pursuant to the ADA.

48. Plaintiff seeks injunctive and compensatory relief as the Court deems right and just. Plaintiff seeks an order from this Court mandating the Defendants from further or additional violations of the ADA. Further, Plaintiff seeks an order from this Court mandating that the Defendant, Madison County, Illinois, implement training for all employees regarding lawful compliance with the ADA and that a monitor be appointed to ensure compliance.

WHEREFORE Plaintiff respectfully requests this Court find for him and against Defendants, for all relief available under the ADA, including but not limited to, compensatory damages for his loss of income and benefits, emotional distress, attorney's fees, an any other legal and equitable (including but not limited to injunctive) relief this Court deems just, fair, and proper.

## COUNT II
## VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT

49. Plaintiff incorporates and restates each of the above paragraphs as is fully set forth herein.

50. Plaintiff brings Count II against Defendants for interfering with his right to take leave and retaliating against him for taking leave which he was entitled under the FMLA.

51. Plaintiff is considered an "eligible employee" as defined by 29 U.S.C. 2611(2).

52. Defendants are employers as defined by 29 U.S.C. 2611(4).

53. Plaintiff was entitled to FMLA leave for his life-threatening illness and provided Defendants with notice of his intent to take FMLA leave.

54. Plaintiff engaged in protected activity when he requested as was granted FMLA leave by Defendants.

55. Defendants, as individuals and through their officers, agents, supervisors, and employee, were aware of Plaintiff's protected conduct.

56. Plaintiff was entitled to be restored to his position as Maintenance Supervisor which he held before lawfully taking FMLA leave pursuant to 29 U.S.C. 2614(a)(1).

57. Defendants wrongfully interfered with Plaintiff's right to return to his pre-leave position when they failed to reinstate him into his previous position after he made it clear that he was able and willing to return to work.

58. Defendants wrongfully interfered with Plaintiff's employment subsequent to taking protected FMLA leave by terminating his employment for pretextual reasons.

59. Defendants retaliated against Plaintiff for engaging in protected activities under the FMLA when they failed to reinstate him into his previous position as Maintenance Supervisor

60. Defendants retaliated against Plaintiff for engaging in protected activities under the FMLA by terminating his employment for pretextual reasons.

61. As a direct and proximate cause of Defendants' violations of the FMLA, Plaintiff has incurred damages in the form of loss of income and benefits, emotional distress, attorney's fees, costs, and expenses in bringing this claim, and Plaintiff is entitled to recover his attorney's fees, costs and expenses pursuant to the FMLA.

WHEREFORE Plaintiff respectfully requests this Court find for him and against Defendants, for all relief available under the FMLA, including but not limited to, lost wages and benefits and other compensation, or in the alternative, other monetary losses sustained as a direct

result of Defendants' violation of FMLA, and interest on those amounts, each in amounts to be determined at trial; liquidated damages and Plaintiff's attorney's fees and cost and any such other and further relief as the Court deems just and equitable under the circumstances.

Respectfully submitted,

/s/Michael Gras
MICHAEL GRAS, #6303414
Law Office of Christopher Cueto, Ltd.
7110 West Main Street
Belleville, IL 62223
Phone: (618) 277 – 1554
Fax: (618) 277 – 0962
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

Pursuant to Rule 7.1 of the Local Rules of the Southern District of Illinois, I certify that a true and correct copy of the foregoing has been properly served upon all counsel of record as required by the Federal Rules of Civil Procedure.

/s/Michael Gras
MICHAEL GRAS, #6303414
Law Office of Christopher Cueto, Ltd.
7110 West Main Street
Belleville, IL 62223
Phone: (618) 277 – 1554
Fax: (618) 277 – 0962